**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MICHAL HOLZER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BUMBLE INC., LIDIANE JONES, WHITNEY WOLFE HERD, and ANURADHA B. SUBRAMANIAN, <br><br> Defendants. | Case No.: 1:24-cv-01131-RP |

**MATTHEW ROBERTS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF, AND
<u>APPROVAL OF COUNSEL</u>**

**TABLE OF CONTENTS**

SUMMARY ........................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

PROCEDURAL BACKGROUND ........................................................................................ 5

ARGUMENT ........................................................................................................................ 6

    I.       Movant Should Be Appointed Lead Plaintiff ................................................... 6

          A.      Movant Filed a Timely Motion in Response to a PSLRA Notice ......................... 7

          B.      Movant Has the Largest Financial Interest ............................................................ 7

          C.      Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil
Procedure ............................................................................................................... 8

                1.      Movant's Claims Are Typical With the Claims of the Class ........................... 8

                2.      Movant Is An Adequate Representative ......................................................... 9

    II.      The Court Should Approve Movant's Choice of Counsel ........................................ 11

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*,
    2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) ........................................................ 1

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ........................................................................................ 8

*Hohenstein v. Behringer Harvard REIT I, Inc.*,
    No. 12-cv-3772, 2012 WL 6625382 (N.D. Tex. Dec. 20, 2012) ........................................... 11

*Makhlouf v. Tailored Brands, Inc.*,
    2017 U.S. Dist. LEXIS 41872 (S.D. Tex. Mar. 23, 2017) ..................................................... 7

*Parker v. Hyperdynamics Corp.*,
    No. 4:12-CV-999, 2013 U.S. Dist. LEXIS 21767 (S.D. Tex. Feb. 19, 2013) ....................... 10

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    2015 U.S. Dist. LEXIS 163811 (S.D. Tex. Dec. 7, 2015) ...................................................... 8

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) .................................................................................................. 9

*In re Waste Mgmt. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) .................................................................................... 9

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

## SUMMARY

Movant respectfully submits the following argument in support of his Motion, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, for: (1) appointment as Lead Plaintiff in the Action; and (2) approval of his selection of counsel on behalf of all investors who purchased or otherwise acquired Bumble Inc. ("Bumble" or the "Company") securities between November 7, 2023 and August 7, 2024, inclusive (the "Class Period"), and were damaged thereby. Movant seeks to recover damages under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) against Defendants.

Pursuant to the PSLRA, the class member who possesses the largest financial interest in the relief sought by the class and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the "most adequate plaintiff"—the plaintiff most capable of adequately representing the interests of class members. The most adequate plaintiff shall be appointed as lead plaintiff to lead the litigation. Movant believes that he is the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff based on the financial losses suffered as a result of Defendants' wrongful conduct. Moreover, Movant satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23(a), as his claims are typical of other Class members' claims, and he will fairly and adequately represent the interests of the Class. *See generally Abouzied v. Applied Optoelectronics, Inc.*, 2018 U.S. Dist. LEXIS 16801, at \*5-7 (S.D. Tex. Jan. 22, 2018). In addition, Movant's selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as lead counsel and Condon Tobin Sladek Thornton Nerenberg PLLC ("CTSTN") as liaison counsel and should be approved, as these firms have substantial expertise and experience in securities and class action litigation.

**FACTUAL BACKGROUND**[1]

Bumble is an American company, launched in 2014, which purports to be a dating app (the "Bumble App"), and proclaims to be one of the first dating apps built with women at the center, where women make the first move. ¶ 23. Bumble App claims to be a leader in the online dating sector across several countries, including the United States, the United Kingdom, Australia and Canada. *Id*. As of the year ended December 31, 2023, the Bumble App had approximately 2.5 million Bumble App paying users. *Id*.

The statements in Paragraphs 25 to 33 of the *Holzer* Complaint were false and/or materially misleading. ¶ 34. Defendants created the false impression that they possessed reliable information pertaining to the Company's projected revenue outlook and anticipated growth on the back of its tiered-subscription options and subsequent app relaunch, while also downplaying the potential disruption to Bumble's brand and reputation caused by the imminent change in leadership. *Id*. In truth, Bumble's Premium Plus subscription plan did not have a clear market fit and would very quickly need to be revamped. *Id*. Bumble's tiered-subscription options were ill equipped to provide the claimed revenue per user benefit to the Company's faltering market share, particularly regarding user growth and monetization. *Id*. Defendants misled investors by providing the public with materially flawed statements of confidence and growth projections which did not account for these variables. *Id*.

On February 27, 2024, the Company reported fourth quarter and full year 2023 results and, pertinently, cut their full year 2024 guidance as follows: total revenue growth of 8% to 11% and

---

[1] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Holzer* Complaint") filed in the action entitled *Holzer v. Bumble Inc., et. al.*, Case No. 1:24-cv-01131-RP (the "*Holzer* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Holzer* Complaint. The facts set forth in the *Holzer* Complaint are incorporated herein by reference.

Bumble App revenue growth of 9% to 11%. ¶ 35. Regarding the adjusted EBITDA margin growth: at least 300 basis points, which excludes expected severance and other non-recurring charges related to the transformation initiative of between $20 million and $25 million. *Id*.

During an earnings call following Bumble's updated guidance, Defendant Jones also debuted a "bold plan to transform Bumble" that she claimed would "lead the company to its next phase of growth and innovation." ¶ 36.

The aforementioned press releases and statements made by the Individual Defendants are in direct contrast to statements they made during the November 7, 2023 earnings call and November 23, 2023 presentation. ¶ 40. On those calls, Defendants praised the upcoming launch of their new Premium Plus subscription tier and claimed that the new offering would not only protect the Company's average revenue per paid user but would further provide revenue growth per user as subscribers would purportedly move up the tiered subscriptions. *Id*.

Investors and analysts reacted immediately to Bumble's revelation. The price of Bumble's common stock declined dramatically. ¶ 41. From a closing market price of $13.18 per share on February 27, 2024, to $11.23 per share on February 28, 2024. *Id*.

On March 4, 2024, Defendants Jones and Subramanian presented on behalf of Bumble at Morgan Stanley's Technology Media & Telecom Conference 2024. ¶ 43.

During the presentation, Defendants highlighted their confidence in the Bumble app's relaunch and corresponding revamp of the Premium Plus subscription tier to drive ARRPU growth during the following question-and-answer segment. ¶ 44.

On May 8, 2024, Bumble published its first quarter fiscal 2024 results and reiterated the Company's full year 2024 guidance. ¶ 45.

A corresponding earnings call was held the same day during which Defendants spoke on their app relaunch and plans for their Premium Plus subscription tier. ¶ 46.

The statements in Paragraphs 35 to 46 of the *Holzer* Complaint were false and/or materially misleading. ¶ 47. Defendants created the false impression that they possessed reliable information pertaining to their consumer market, resulting in Defendants' confidence that the relaunch of the Bumble app, its associated marketing campaign, and the connected revamp of the Company's Premium Plus subscription tier would boost the Company's growth through an expanded user base and increased revenue per paid user in the second half of the year. *Id*. To the contrary, Defendants expectations had little, or an otherwise erroneous, basis. *Id*. In truth, much like Bumble's Premium Plus pricing tier, the Company's app relaunch was merely a desperate attempt to keep pace with competition overshadowing Bumble's growth in the sector. *Id*.

On August 7, 2024, Defendants released mixed Q2FY24 results and drastically cut FY24 projections as follows: total revenue year over year growth in the range of 1% to 2% and Bumble App revenue growth in the range of 1.5% to 2.5%. ¶ 48. Regarding the adjusted EBITDA margin growth: at least 200 basis points. *Id*.

During the same-day earnings call, Defendant Jones made it clear this "projection reset" is the result of Bumble's "difficult but important ***decision to reset our strategy*** to deliver durable customer value by addressing two fundamental and interconnected challenges" (emphasis added). ¶ 49.

The aforementioned press release and statements made by the Individual Defendants were misleading and in direct contrast to Defendants' prior statements, including those made during the February 27, 2024, March 4, 2024, and May 8, 2024, earnings calls and presentations. ¶ 51. On those calls, Defendants confidently claimed that the app relaunch and the integrated revamp of the

4

Premium Plus subscription service were focused on customer-focused desires and would improve the Bumble App experience, improve the Company's brand identity, and drive revenue growth in the back half of 2024 and onward. *Id*. In truth, Bumble had yet to successfully monetize its updated Premium Plus subscription tier, calling it a "future revenue stream" and was still working on improving the core experience, as well as trust and safety, from user perspectives. *Id*. Defendants misled investors by providing the public with materially flawed statements of confidence and growth projections which did not account for these variables. *Id*.

A number of well-known analysts who had been following Bumble reported on the Company's lowered guidance in response to Bumble's disclosures. ¶ 52. For example, RBC Capital Markets released a statement regarding Bumble's recent issues. *Id*.

Similarly, Piper Sandler released a statement on Bumble's shockingly low current estimates, as well as the Company's uncertain future. ¶ 53.

As a result, investors and analysts reacted immediately to Bumble's revelations. ¶ 54. The price of Bumble's common stock declined dramatically. *Id*. From a closing market price of $8.06 per share on August 7, 2024, Bumble's stock price fell to $5.71 per share on August 8, 2024. *Id*.

## **PROCEDURAL BACKGROUND**

Plaintiff Michal Holzer ("Holzer") commenced the first-filed action against Bumble in this Court on September 24, 2024. On the same day, counsel for Holzer, Levi & Korsinsky, published a notice on *Globe Newswire* (the "Notice"), announcing that a securities class action had been initiated against Defendants, herein, and advising investors in Bumble that they had 60 days to seek appointment as lead plaintiff. *See* Declaration of Stuart L. Cochran in Support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Counsel (the "Cochran Decl.") at Exhibit ("Ex.") C.

## **ARGUMENT**

### I. **Movant Should Be Appointed Lead Plaintiff**

The PSLRA provides the procedure for appointing a lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action (i) by not later than 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—i.e., the plaintiff most capable of adequately representing the interests of the Class—is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof by a "purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

As set forth below, Movant satisfies all of the foregoing criteria. Movant has filed a Motion to be appointed as Lead Plaintiff and has, to the best of his knowledge, the largest financial interest sought by any class member in this litigation. In addition, Movant meets the relevant requirements

of Federal Rule of Civil Procedure 23(a) and is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed lead plaintiff. *See Makhlouf v. Tailored Brands, Inc.,* 2017 U.S. Dist. LEXIS 41872, at *29 (S.D. Tex. Mar. 23, 2017).

### A.    Movant Filed a Timely Motion in Response to a PSLRA Notice

On September 24, 2024, pursuant to 15 U.S.C. § 78u-4(a)(3)(A), the Notice of the pendency of the *Holzer* Action was published on *Globe Newswire*—a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against Defendants, herein, and advising purchasers of Bumble securities that they had until November 25, 2024 to file a motion to be appointed as lead plaintiff.

Movant files this motion pursuant to the Notice and within the 60-day period following publication. Movant has also submitted a sworn certification attesting to his purchases of Bumble securities and stating that he is willing to serve as Class representative and to provide testimony at deposition and trial, if necessary. *See* Cochran Decl., Ex. A. By making a timely motion in response to a published PSLRA notice, Movant satisfies the first PSLRA requirement to be lead plaintiff.

### B.    Movant Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Movant believes he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff."

During the Class Period, Movant purchased a total of 4071.733 shares, at a net cost of $53,558.23, and suffered approximately $26,693.20 using a last-in-first-out ("LIFO") analysis. *See*

Cochran Decl., Ex. B. To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23. Movant, thus, satisfies the second PSLRA requirement—the largest financial interest in the relief sought by the Class.

### C.    Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Plains All Am. Pipeline, L.P. Sec. Litig.,* 2015 U.S. Dist. LEXIS 163811, at *10-12 (S.D. Tex. Dec. 7, 2015). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *See Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997).

#### 1.  Movant's Claims Are Typical With the Claims of the Class

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties"

8

are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because he suffered the same injuries as the absent Class members, he suffered as a result of the same course of conduct by Defendants, and his claims are based on the same legal issues. *See In re Waste Mgmt. Sec. Litig.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000). Importantly, the typicality requirement of Rule 23 does not require the lead plaintiff to be identically situated with all class members in order to satisfy typicality. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Movant's claims are typical with the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants violated the federal securities laws by disseminating materially misleading statements concerning the operations and financial performance of Bumble. Movant, like all of the members of the Class, purchased Bumble shares at prices artificially inflated by Defendants' alleged misstatements and omissions and was damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the claims of the Class, satisfy the typicality requirement of Rule 23(a)(3).

### 2. Movant Is An Adequate Representative

Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movants are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant's interests are clearly aligned with those of the other members of the Class. Not

only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial losses he has suffered as a result of the wrongful conduct alleged. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that he will vigorously pursue the interests of the Class. *See Parker v. Hyperdynamics Corp.*, No. 4:12-CV-999, 2013 U.S. Dist. LEXIS 21767, at *9 (S.D. Tex. Feb. 19, 2013) (losses suffered ensure lead plaintiff will adequately represent absentee class members). Finally, Movant retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See id.* (selection of "law firms that are competent at and experienced in prosecuting securities class actions" evidence of adequacy). Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, because Movant has sustained the largest amount of losses from the Defendants' alleged wrongdoing, he is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

Moreover, Movant considers himself to be a sophisticated investor, having been investing in the stock market for over eight years. He resides in Wolcott, Connecticut, and possesses a Master of Business Administration (MBA). Movant is currently employed as a Senior IT Project Manager at Motorola Solutions, Inc. Further, Movant has experience overseeing attorneys, as he has hired attorneys for real estate matters. *See* Movant's Declaration, Ex. D to Cochran Decl. Accordingly, Movant meets the adequacy requirement of Rule 23.

10

II.    **The Court Should Approve Movant's Choice of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should interfere with the lead plaintiff's selection "only when necessary 'to protect the interests of the class.'" *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 12-cv-3772, 2012 WL 6625382, at *3 (N.D. Tex. Dec. 20, 2012). Movant has retained Levi & Korsinsky to serve as lead counsel and CTSTN to serve as liaison counsel on behalf of the Class. As reflected in the accompanying firm résumés, Levi & Korsinsky and CTSTN possess extensive experience and expertise in securities litigation and have the necessary resources to efficiently and effectively prosecute the Action. *See* Cochran Decl., Ex. E. Furthermore, these firms have continually invested time and resources in carefully investigating and prosecuting this case. The Court may be assured that the proposed lead and liaison counsel will provide the highest caliber of legal representation.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court grant his motion and enter an Order: (1) appointing Movant as Lead Plaintiff in the Action; (2) approving Movant's selection of Levi & Korsinsky as lead counsel and CTSTN as liaison counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

*[Signature on following page]*

11

Dated: November 26, 2024

Respectfully submitted,

**CONDON TOBIN SLADEK
THORNTON NERENBERG PLLC**

 */s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No.: 24027936
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: 214-265-3800
Facsimile: 214-691-6311
Email: scochran@condontobin.com

*Liaison Counsel for Matthew Roberts and Proposed
Liaison Counsel the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

*Counsel for Matthew Roberts and Proposed Lead
Counsel for the Class*

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day, November 26, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Stuart L. Cochran
Stuart L. Cochran

13